Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3371 | **DATE** | 8/2/2001 |
| **CASE TITLE** | Robert Drennan vs. Indiana Harbor Belt Railroad Company, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Dart Warehouse's motion to dismiss [45] is granted in part and denied in part, as set forth in the accompanying Memorandum Opinion and Order. IHB's motion for summary judgment against the plaintiff [20] is denied. IHB's motion for summary judgment against Premier [23] is denied. A status hearing is set for 8/23/01 at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | AUG 06 2001 | 73 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | date mailed notice |
| RJ/ea courtroom deputy's initials | | 01 AUG -3 AM 11:26 Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
AUG 0 6 2001

| | |
|---|---|
| ROBERT DRENNAN, | ) |
| Plaintiff, | ) Case No. 99 C 3371 |
| v. | ) |
| INDIANA HARBOR BELT RAILROAD COMPANY, et al., | ) Judge Joan B. Gottschall |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

### Background

Plaintiff Robert Drennan was injured while working as a yardman for defendant Indiana Harbor Belt Railroad Company ("IHB"). Drennan's job required him to assist in moving railcars out of Crooks Warehouse, located at 9441 West Fullerton Avenue, Franklin Park, Illinois. In order to do so, it was periodically necessary for him to climb from in between two rail cars at track level up to the dock area, approximately 50 inches above. Only one set of stairs connected the track level to top of the dock area. On July 11, 1997, plaintiff needed to get down to the track level and then back up to the dock, but he was several hundred feet away from the single set of stairs. Thus, he used the end ladder of a railcar to climb down. As he was climbing back up the end ladder to return to the dock, his foot slipped and he struck his shoulder on the end of the railcar.

Drennan filed this action against IHB and Premier Reload, Inc. Count I is directed against IHB, and alleges that IHB violated the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.*, by negligently and carelessly failing to provide him with a reasonably safe place to work.

Drennan alleges that IHB committed one or more of the following negligent acts or omissions: 1) failed to adopt, install, implement and enforce a safe method and procedure for ascending the dock area; 2) failed to provide plaintiff with adequate and safe equipment and ladders to perform the described operation; 3) failed to adequately light the area where plaintiff was injured; 4) failed to inspect work locations for hazards to yardmen; 5) violated certain regulations, standards and requirements in force or prescribe by the Secretary of Transportation through the F.R.A.; and 6) otherwise failed to exercise ordinary care to provide plaintiff with a safe place to work. (Am. Compl. at ¶ 2-3). Count II is directed against Premier, the company which Drennan believed to be the owner of the warehouse, and alleges defects in the condition of the building, including the lack of additional fixed ladders or stairways to get between the track level and the dock level. (Am. Compl. at 4-6).

IHB has filed a third-party complaint naming as third-party defendants Mortimer Development Corporation ("MDC") and Dart Warehouse Corporation, among others. In addition, IHB filed a cross-claim against Premier, seeking indemnification for any liability for Drennan's claim. The facts relevant to these claims follow. The claims by IHB against Dart arise out of the interplay between three separate contracts. On January 3, 1985, IHB entered into a Private Sidetrack Agreement with third-party defendant MDC. This agreement provides MDC with the title and ownership of a certain sidetrack, which provides rail service to the Crooks Warehouse. The Sidetrack Agreement contains the following indemnity provision:

> (c) Notwithstanding anything contained in Section 8(b), and irrespective of any negligence of [IHB], [MDC] assumes sole responsibility for and agrees to indemnify, save harmless and defend [IHB] from and against all claims, actions or legal proceedings arising, in whole or in part, from (1) the failure of

> [MDC] to comply with requirements set forth in Section 3 and
> 7 hereof [regarding the maintenance and proper clearance of the
> sidetrack]; [and] (2) any claims, actions or legal proceedings under
> the Federal Employers' Liability Act and any amendments to said
> Act now or hereafter in effect, alleging or claiming, in legal effect,
> that [IHB] failed to correct or guard against an unsafe condition. . . .

(Dart's Mot. to Dismiss, Exh. C, §8(c)). The Sidetrack Agreement is terminable only upon 30 days written notice. (*Id.* at §12).

On January 4, 1985, IHB, MDC, and third-party defendant Dart all entered into a contract (the "Consent Agreement"). That contract expressly incorporates the Sidetrack Agreement, and provides that IHB will consent to Dart's use of the private sidetrack (the same track that was the subject of the Sidetrack Agreement). In turn, Dart agrees to "bind[] itself to perform in the same manner and form as [MDC] all the terms and conditions of [the Sidetrack Agreement between IHB and MDC]." (Dart's Mot. to Dismiss, Exh. D). The Consent Agreement may be canceled upon 30 days written notice by any of the three parties to the other two, or upon the termination of the Sidetrack Agreement between IHB and MDC. Then, on July 1, 1985, MDC and Dart entered into an Industrial Building Lease ("Dart Lease"), in which MDC leased to Dart the premises known as 9441 Fullerton Avenue, Franklin Park, Illinois, along with the buildings and improvements thereon. (Dart's Mot. to Dismiss, Exh. E). The lease terminated, by its terms, on June 30, 1995, and was not renewed by the parties. Thus, as of the date of Drennan's accident, Dart's lease of the warehouse premises had expired, and Dart had vacated the premises.

IHB also maintained a separate contractual relationship with co-defendant Premier. On January 1, 1996, IHB entered into a lease agreement with Premier ("Premier Lease"). Under this agreement, Premier agreed to lease a parcel of land located just outside the warehouse from IHB,

3

and IHB agreed to provide rail service to Premier. By the terms of this agreement, Premier agreed to indemnify IHB,

> from all expenses, damages, actions, [etc.] of every kind or nature . . . arising out of any failure by [Premier] to perform any of the agreements, terms, covenants or conditions of this Lease, and any bodily injury . . . of any person or entity that comes upon the premises or appurtenances thereto, and also for any matter growing out of the condition, occupation, maintenance, alteration, repair use or operation of the Premises or appurtenances thereto or any part thereof, or of the walkways, roadways, sidewalks, curbing and loading areas contiguous thereto . . . , unless caused directly by the sole negligence of [IHB].

(IHB's Exh. C). IHB alleges that the railcar on which Drennan was injured was placed in the warehouse by IHB at the direction of Premier. IHB further alleges that, while the Premier Lease does not specifically mention the warehouse itself, it was understood by the parties (including Jeff Leske, Premier's President) that the agreement pertained to whatever rail services IHB provided to Premier. (IHB's Mot. for Summ. J. Against Premier, at 3).

## Analysis

The motions currently pending before this court include: 1) IHB's motion for summary judgment against Drennan; 2) Dart's motion to dismiss IHB's third-party claims against Dart; and 3) IHB's motion for summary judgment against Premier as to certain of IHB's cross-claims against Premier.[1] The court will consider each motion in turn.

*IHB's Motion for Summary Judgment Against Drennan*

---

[1] This court has jurisdiction, concurrent with state courts, over plaintiff's FELA claim. 45 U.S.C. §56. The court may exercise supplemental jurisdiction over the state law claims advanced by IHB in its cross-claim and third-party complaint, because they are "so closely related" to the FELA claim as to "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367.

4

IHB has moved for summary judgment against Drennan, arguing that IHB's wrongdoing was not a cause of Drennan's injury, but rather just a condition to it. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

FELA provides a cause of action against railroads to persons injured while employed by the railroad from the negligence of the railroad's officers, agents, or employees. 45 U.S.C. § 51; *Ramirez v. National R.R. Passenger Corp.*, No. 98 C 2817, 1999 WL 58559, at *2 (N.D. Ill. Feb. 3, 1999). In order to establish liability under FELA, "the plaintiff must show circumstances which a reasonable person would foresee as creating a potential for harm. . . . The plaintiff must then show that this breach played any part, even the slightest, in producing the injury." *McGinn v. Burlington Northern R.R.*, 102 F.3d 295, 300 (7th Cir. 1996) (citation omitted). A FELA case should go to the jury even if only slight evidence of negligence exists. *Harbin v. Burlington*

5

*Northern R.R. Co.*, 921 F.2d 129, 131 (7th Cir. 1990); *Wilkerson v. McCarthy*, 336 U.S. 53, 55 (1949); *Ramirez*, 1999 WL 58559 at *2. Thus, the quantum of evidence required to establish liability in a FELA case is much less demanding than that required in an ordinary negligence case. *See McGinn*, 102 F.3d at 300. Nonetheless, evidence that the railroad acted negligently is not sufficient, standing alone, to permit recovery. A plaintiff must also provide evidence that the railroad's negligence caused the injury. *Atchison, Topeka & Santa Fe Ry. Co. v. Toops*, 281 U.S. 351, 354 (1930).

In support of its motion for summary judgment, IHB relies on *Green v. River Terminal Ry. Co.*, 763 F.2d 805 (6th Cir. 1985) and *McGinn*, 102 F.3d 295 (7th Cir. 1996). Both of these cases are readily distinguishable, however. In *Green*, the plaintiff employee was forced to get off his train because the radio on the train was inoperable. While off the train, the plaintiff was assaulted by another employee. In *Green*, the Sixth Circuit upheld the trial court's finding that there was no evidence that the assault was foreseeable, "an essential ingredient of [FELA] liability." *Green*, 763 F.2d at 808. There, plaintiff produced no evidence that management knew of any problems or extraordinary arguments between the two men, nor any evidence that management knew that the employee who committed the assault was drunk at the time. Thus, the court affirmed the district court's decision to grant a directed verdict in favor of the railroad. In *McGinn*, the plaintiff tripped over his own suitcase and sued the railroad alleging that the engine cab should have been equipped with luggage racks. In that case, the court found no evidence that the railroad could have foreseen that the lack of a luggage rack would create a hazard. *McGinn*, 102 F.3d at 301.

In contrast to these cases, the evidence in this case is sufficient for a jury to find

Drennan's injury reasonably foreseeable. The evidence suggests that switchmen frequently needed to go from dock level to track level, often times far away from the one set of stationary stairs. This sometimes left switchmen with no option other than using the end ladder of the car, an unsafe procedure. (Pl.'s Exh. 2 at 42; Pl's Exh. 5). Thus, there is at least some evidence of foreseeability. *See Ramirez*, 1999 WL 58559, at *2-3 (drawing a similar distinction from *McGinn*). Here, Drennan has met his low burden of demonstrating evidence sufficient to overcome summary judgment in a FELA case. IHB's motion for summary judgment against Drennan is denied.

### *Dart's Motion to Dismiss*

IHB's third-party complaint contains four counts against Dart: 1) negligence and contribution; 2) indemnification; 3) breach of contract; and 4) implied indemnity. Dart moves to dismiss all of these claims. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court should dismiss a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998) (citations omitted). The court must accept all well-pleaded factual allegations in the light most favorable to the plaintiff. *Colfax Corp. v. Illinois State Toll Highway Auth.*, 79 F.3d 631, 632 (7th Cir. 1996).

Dart argues that as of July 11, 1997, Dart's lease of the warehouse had expired and Dart had vacated the premises. Dart argues that it therefore owed no duty to the plaintiff. In response, IHB argues that the expiration of the lease is irrelevant, because the Consent Agreement is still in force, since 1) no notice of termination was ever given by Dart, and 2) the Sidetrack Agreement

7

between IHB and MDC is still in force. Thus, IHB contends, Dart is still bound "to perform in the same manner and form as [MDC] all the terms and conditions of [the Sidetrack Agreement between IHB and MDC]." (Dart's Mot. to Dismiss, Exh. D). Dart contends that it should not be held liable under the terms of the Sidetrack Agreement because "[n]othing in the Amended Complaint states that the accident happened on a railroad track or on the side tracks [described in the Sidetrack Agreement]. The accident happened while Plaintiff had been pulling himself up onto a dock." (Dart's Mot. to Dismiss, at 4). Dart notes that neither the Sidetrack Agreement nor the Consent Agreement mention the dock area.

Under Illinois law,[2] where a motion to dismiss involves the interpretation of a contract the court must first determine whether the contract is ambiguous. *Quake Constr., Inc. v. American Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990). In deciding whether the contract is ambiguous, the court "must construe the words of [the] contract in accordance with their usual, common and ordinary meaning." *Coral Chem. Co. v. Novamax Tech. Corp.*, No. 97 C 4358, 1997 WL 695660, at * 3 (N.D. Ill. Nov. 5, 1997) (internal quotation marks and citation omitted). If the relevant terms are susceptible to more than one reasonable interpretation, then the contract is ambiguous and the interpretation of the terms is a question of fact which cannot be resolved on a motion to dismiss. *Quake Constr.*, 565 N.E.2d at 994.

The court concludes that the contracts at issue here are at least reasonably susceptible to the construction that IHB gives them. Initially, the court notes that the unambiguous terms of the

---

[2]The parties do not argue choice of law with respect to the state law claims; rather, they appear to consider this purely a matter of interpreting the contracts at issue. For purposes of the motions presently under consideration, the court will assume that Illinois law applies to any state law claims in this case over which this court has supplemental jurisdiction, because the tracks and warehouse are located in Illinois, and because Drennan's injury took place in Illinois.

8

Sidetrack Agreement and the Consent Agreement indicate that both are still in force. No party has given written notice to terminate either of those agreements. If the parties had meant for the Consent Agreement to terminate upon the expiration of the Dart Lease, they could have expressly provided for that. Thus, Dart is obligated to perform "in the same manner and form" as MDC all the terms and conditions of the Sidetrack Agreement. Although "same manner and form" could reasonably be interpreted to mean that the indemnity obligations should end when all ownership or use interests in the sidetrack are extinguished (since that would be the case for MDC), that phrase could also reasonably be interpreted to mean that Dart is obligated to indemnify IHB so long as MDC is so obligated, absent written notice of termination.

As to the scope of the indemnity provision of the Sidetrack Agreement (expressly incorporated into the Consent Agreement), the court finds ambiguity here as well. The language of the indemnity provision respecting FELA claims is not clearly limited to claims arising out of accidents occurring on the sidetracks. Rather, that provision places on MDC (and Dart, by incorporation) a duty to indemnify IHB for "any claims, actions or legal proceedings under the Federal Employers' Liability Act and any amendments to said Act now or hereafter in effect, alleging or claiming, in legal effect, that [IHB] failed to correct or guard against an unsafe condition. . . ." (Dart's Mot. to Dismiss, Exh. C, §8(c)). The only language that provides an apparent limit on this extremely broad provision is the heading to section 8, under which the indemnity provision appears: "Liability in Connection with Sidetrack." Even the phrase "in connection with," however, could reasonably be read to include indemnity for railroad-related accidents occurring in the warehouse serviced by the sidetrack. *See Seymour v. Chicago & Northwestern Railway Co.*, 124 N.W.2d 157, 159 (Iowa 1963) (broadly construing the phrase "in

connection with" in an indemnity provision of a sidetrack agreement to cover an accident taking place off the defendant's sidetrack and property, but causally connected to the defendant's use of the sidetrack). *Cf. Gaines v. Illinois Central R. Co.*, 796 F. Supp. 313, 318 (N.D. Ill. 1992) (finding the phrase "on or about" a sidetrack to be "much more narrow" than the phrase "in connection with.") *aff'd* 23 F.3d 1170, 1173 (7th Cir. 1994) (not reaching the contractual issue). Thus, the fact that the accident did not take place on the sidetrack itself is not sufficient to defeat IHB's claim against Dart.

The court suspects that the parties probably did not intend for Dart to have a duty to indemnify IHB after Dart's presence in and use of the warehouse and sidetrack had ended, because such a contract would have the potential to place a very unusual burden on Dart – the burden that IHB seeks to impose here. Nonetheless, Dart is unable to point to any unambiguous contractual language that clearly evidences that intent. Nor is Dart able or willing to point the court to any other doctrines of contract law or rules of construction that would allow the court to find that IHB's claim must fail, despite the ambiguity of the language. Hence, the court denies Dart's motion to dismiss with respect to IHB's claims arising out of the contractual relationship between IHB and Dart, including Counts VIII, X, and XII of the third party complaint for indemnification, breach of contract, and implied indemnity.

As to IHB's non-contractual claim, however, the court grants Dart's motion to dismiss. In Count II of the third party complaint, alleging negligence and contribution, IHB alleges that Dart owed a duty to properly maintain the premises in its possession and control. But it is undisputed that at the time of the accident, Dart had vacated the premises. Hence, Dart's motion is granted with respect to IHB's negligence/contribution claim.

*IHB's Motion for Summary Judgment Against Premier*

IHB moves for summary judgment against Premier on Count II (for indemnity) and Count III (for breach of contract) of its cross-claim.[3] IHB argues that the lease agreement between IHB and Premier requires Premier to indemnify IHB for any damages as a result of this accident. IHB also argues that Premier breached the lease agreement by failing to maintain a liability insurance policy to cover any damages awarded as a result of this accident. The Premier Lease provided that IHB would lease to Premier a parcel of land just outside the warehouse, but not including the warehouse. The relevant provisions of the Premier Lease are as follows:

> INDEMNITY AND LIABILITY
> [Premier] shall relieve, indemnify, hold harmless and defend [IHB] from all expenses, damages, actions, [etc.] of every kind or nature . . . arising out of any failure by [Premier] to perform any of the agreements, terms, covenants or conditions of this Lease, and any bodily injury . . . of any person or entity that comes upon the premises or appurtenances thereto, and also for any matter growing out of the condition, occupation, maintenance, alteration, repair use or operation of the Premises or appurtenances thereto or any part thereof, or of the walkways, roadways, sidewalks, curbing and loading areas contiguous thereto. . . , unless caused directly by the sole negligence of [IHB].
>
> INSURANCE
> [Premier] shall maintain continuously in effect a policy of Comprehensive General Liability Insurance, including Contractual Liability covering the liability assumed by [Premier] under [the Indemnity and Liability section set forth above].

---

[3]Although IHB's pleading filed on August 19, 1999 contains what is entitled a "Counterclaim," against Premier, it is actually a cross-claim under Federal Rule of Civil Procedure 13, because it is a claim by one party against a co- party (not an opposing party) arising out of the transaction or occurrence that is the subject matter of the original action. *See* Fed.R.Civ.P. 13(g).

(IHB's Exh. C). IHB argues that the indemnity provision should be construed to include coverage for this accident, which occurred in the warehouse. In support, IHB refers to portions of the testimony of Jeff Leske, Premier's president, which tend to indicate that Leske considered the warehouse and the nearby parcel of land to be one location. (IHB's Mot. for Summ. J. at 3-4). Leske also testified that as of July 1997, when the railroad was bringing cars into the warehouse, he believed that the Premier Lease "covered" Premier, whether the railroad was bringing cars to the outside location or into the warehouse. (IHB's Mot. for Summ. J. at 4). Finally, IHB notes that the parties did not have a written agreement specifically concerning the warehouse, although the railroad would bring cars into the warehouse at the direction of Premier. (IHB's Mot. for Summ. J. at 3-4). Thus, IHB implies, the parties must have intended for the Premier Lease to extend to cover the warehouse.

At the summary judgment stage, a court should first consider whether a contract's language is ambiguous or unambiguous as a matter of law. If it is ambiguous, then the court may consider extrinsic evidence. If, after consideration of the extrinsic evidence, there remain any triable issues of material fact as to the interpretation of the contract, then summary judgment must be denied. *See Hickey v. A.E. Staley Mfg. Co.*, 995 F.2d 1385, 1389 (7th Cir. 1993).

The court initially finds that the language of the indemnity provision is ambiguous with respect to its scope. The broad language "any matter growing out of the condition, occupation, maintenance, alteration, repair use or operation of the Premises" could certainly be reasonably construed to include an accident that occurred in the warehouse but was related to Premier's use of the nearby parcel. On the other hand, the contract never refers to the warehouse, and it is not clear that the language above extends to reach an accident occurring in the warehouse. Thus, the

court may consider the extrinsic evidence offered by IHB. After considering the extrinsic evidence presented by IHB, the court remains unconvinced that IHB has conclusively established the intent of the parties at the time of contracting. An ambiguous contract is to be interpreted by examining extrinsic evidence of the intent of the parties at the time the contract was executed. *See, e.g., CSFM Corp. v. Elbert & McKee Co.*, 870 F. Supp. 841, 850 (N.D. Ill. 1994). The court notes that IHB's extrinsic evidence is more probative of the understanding of the parties *after* the Premier Lease was entered into than at the time of contracting. Premier did not have a possessory interest in the warehouse at the time the Premier Lease of the nearby parcel was executed, so the question of whether the parties, at the time of contracting, intended for an accident in the warehouse to be covered by the language of the indemnity provision is an especially difficult one. It is possible, however unlikely, that the parties simply intended that the railroad would service the warehouse without a written agreement to cover this additional service. Moreover, the fact that Leske believed, in July 1997, that the Premier Lease covered Premier's operations, whether the railroad serviced the outside location or the warehouse, is not particularly probative of Premier's intent at the time the Premier Lease was executed. *See generally Ooley v. Schwitzer Division, Household Mfg. Inc.*, 961 F.2d 1293, 1298-99 (7th Cir. 1992). It may be stronger evidence of a subsequent modification of the contract, but the Premier Lease contains a provision barring any modification of the agreement unless in writing and signed by the parties. (IHB's Exh. C). Although such a provision may be waived, the evidence of such waiver must be clear and convincing. *See Czapla v. Commerz Futures*, LLC, 114 F. Supp. 2d 715, 718 (N.D. Ill. 2000); *Duncan v. Cannon*, 561 N.E.2d 1147, 1152 (Ill. App. Ct. 1990). IHB does not argue modification, and the court concludes that, in any event, the extrinsic

evidence offered by IHB is insufficient to clearly and convincingly show waiver of the clause prohibiting oral modifications. Thus, IHB's motion for summary judgment against Premier is denied as to Count II.

Because the scope of the insurance coverage required under the Premier Lease is determined with reference to the scope of the indemnification provision, IHB has failed to conclusively establish that Premier has breached its duty to maintain adequate insurance. Thus, IHB's motion for summary judgment against Premier is denied as to Count III as well.

## Conclusion

For the reasons set forth above, Dart's motion to dismiss is granted in part and denied in part, and IHB's two pending motions for summary judgment are denied.

ENTER:

Joan B. Gottschall
United States District Judge

DATE: August 2, 2001